UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**  Plaintiff,  vs.  **CRYSTAL HUGHES,**  Defendant. | 2:22-CR-20507-TGB-JJCG-6  HON. TERRENCE G. BERG  **OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS (ECF NO. 95)** |

Crystal Hughes moves to suppress evidence the government seized from her iCloud account. Hughes contends the government's search warrant failed to establish a sufficient nexus between any criminal activity and the iCloud account. Hughes also claims the warrant was overbroad. Finally, Hughes claims that the evidence is not admissible under the "good faith" exception to the exclusionary rule. For the following reasons, Hughes' Motion will be **DENIED**.

## I. BACKGROUND

Hughes is charged in a multi-defendant drug trafficking conspiracy operating in Detroit. The Affidavit in support of the search warrant for Hughes' iCloud account was 47 pages in length. ECF No. 97-1 (filed under seal). As part of the investigation of the drug trafficking conspiracy, the government seized cell phones from co-defendant Jeffrey Hester-Jackson, allegedly one of the leaders of the organization. ECF No. 105, PageID.576-78. According to the Affidavit, the analysis of these cell

1

phones revealed communications sent via Telegram between Hester-Jackson and an account labeled as Crystal Hughes ("the Hughes Account"). ECF No. 97-1, PageID.515-16. Telegram is an encrypted messaging application. *Telegram (software)*, Wikipedia, https://en.wikipedia.org/wiki/Telegram_(software) (last visited November 21, 2024). These communications, which took place from around April 9, 2022, to around April 13, 2022, included the following:

    1. Hester-Jackson sent the Hughes Account a long sequence of numbers, and wrote, "see what's up with this one." The Hughes Account wrote back, "k." Hester-Jackson also sent the Hughes Account multiple mailing addresses. Hester-Jackson also wrote, "from shelly the address its coming from." The Hughes Account wrote back: "She said She at work." ECF No. 97-1, PageID.515-20. The Hughes Account later sent Hester-Jackson a screenshot image of a package tracking webpage, where part of the title of the image was "telegram-cloud-photo." *Id*. The United States Postal Service ("USPS") also received a phone call from Crystal Hughes' phone number, providing tracking information for a package in the mail which had a tracking number identical to the long number Hester-Jackson sent to the Hughes Account over Telegram. ECF No. 97-1, PageID.521.

    On April 11, 2022, USPS received a phone call from a woman identifying herself as "Shelly Hughes," also asking about a package in the mail which had that same tracking number Hester-Jackson sent to the

2

Hughes Account over Telegram. ECF No. 105, PageID.577. "Shelly Hughes" also correctly identified the sender and recipient mailing addresses for the shipment of that package. *Id.* The USPS searched that package on April 14, 2022, and found approximately one kilogram of a substance that tested positive for fentanyl. ECF No. 97-1, PageID.521.

 2. Hester-Jackson asked the Hughes Account to send $2,000 to a Cash App account under the name of Juan Garcia. ECF No. 97-1, PageID.523-24. The Hughes Account said that she would, and then sent Hester-Jackson a photograph showing a receipt for that transaction. *Id.* Cash App is an application that facilitates money transfers between user account holders. *Cash App*, Wikipedia, https://en.wikipedia.org/wiki/Cash_App (last visited November 21, 2024). A subpoena of Cash App later showed that Crystal Hughes transferred another $1,500 to Juan Garcia. ECF No. 97-1, PageID.523-24.

 3. The Hughes Account asked Hester-Jackson if he knew of anyone "selling a bow of ice. real shit not Nothing played with." Hester-Jackson responded, "Loll who want that yea I do." Hester-Jackson said that he could get it the following day for $2,000. ECF No. 97-1, PageID.527-30.

 Following review of the above information, the government subpoenaed Apple, requesting information about any iCloud accounts associated with Crystal Hughes' telephone number. ECF No. 97-1, PageID.534. iCloud accounts allow users to store their personal data and files on Apple's servers. Apple responded to the subpoena by indicating

3

that Hughes' phone number was associated with an iCloud account linked to the email address of "crystalhughes1990@icloud.com." *Id.* Apple also stated that Hughes' iCloud account was set to back up photos, web browsing history, emails, text messages, notes, and certain location data. *Id.* at PageID.535. Such accounts also require users to provide their payment details. *Id.* at PageID.537.

The government then sought a warrant to search Hughes' iCloud account. The Affidavit asserted that communications (1) through (3) discussed above made it likely that Hughes' iCloud account contained evidence of the target offenses, which were drug trafficking and money laundering. *Id.* at PageID.543-44.

The Affidavit further stated that stored communications and files connected to an Apple ID (which often includes an iCloud account) may provide direct evidence of target offenses: they store things like texts and photos which are created and used in furtherance of crime. *Id.* The government stated that they knew that Hughes used a Cash App account and Telegram to advance drug trafficking and money laundering. *Id.* Therefore, they believed that examining Hughes' iCloud account could lead to the discovery of additional evidence. *Id.* The government stated as follows:

> [E]mails, instant messages, internet activity, documents, and contact and calendar information [which are stored on iCloud] can lead to the identification of co-conspirators and

4

> instrumentalities of the crimes under investigation. Investigators know that HUGHES has a CashApp account linked to her phone number and that she likely has the app downloaded to her iPhone. Investigators also know HUGHES used the application Telegram to communicate with HESTER-JACKSON regarding drug trafficking activities and money laundering activities. Therefore, investigators believe examining the TARGET ACCOUNT may lead to the discovery of additional information and/or evidence regarding HUGHES [and the drug trafficking].

ECF No. 97-1, PageID.543-44.

The government asked to access all information on or associated with the iCloud account, with two limitations: first, they only sought to seize messages and emails from January 1, 2022, to October 26, 2022, and second, they only sought to seize materials that were evidence of drug trafficking and money laundering activity occurring after January 1, 2022. *Id.* at PageID.548, PageID.551.

Magistrate Judge Kimberly Altman approved the search warrant. *Id.* at PageID.554. On June 3, 2024, Hughes moved to suppress the evidence the government seized pursuant to the warrant. ECF No. 95. The government responded. ECF No. 105. Hughes replied. ECF No. 107.

## II. ANALYSIS

Hughes argues that: (a) the affidavit for the search warrant did not establish probable cause to search her iCloud account; (b) the search

5

warrant was unconstitutionally overbroad; and (c) the good faith exception for invalid search warrants does not apply.

### A. The Affidavit Established Probable Cause

"The job of the magistrate judge presented with a search warrant application is 'simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Brown*, 828 F.3d 375, 381 (6th Cir. 2016) (*quoting Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "There must, in other words, be a nexus between the place to be searched and the evidence sought." *Brown*, 828 F.3d at 381 (*quoting United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)). A magistrate judge's determination of probable cause must receive "great deference" from district courts deciding motions to suppress. *United States v. Sanders*, 106 F.4th 455, 461 (6th Cir. 2024). "The issuing judge's decision should be left undisturbed if there was a 'substantial basis' for the probable cause finding." *United States v. Tagg*, 866 F.3d 579, 586 (6th Cir. 2018) (*quoting Gates*, 462 U.S. at 238-29).

Here, the affidavit set forth circumstances showing a fair probability that evidence of a crime would be found in a particular place. One of the alleged leaders of a drug trafficking organization, Hester-Jackson, had extensive communications with a Telegram account with the name "Crystal Hughes." ECF No. 97-1, PageID.515-30. And Hughes'

6

own Cash App transactions corresponded to discussions of money transfers made between Hester-Jackson and the Hughes Account. ECF No. 97-1, PageID.523-24. Because Cash App and Telegram are both cell phone applications, there is a high probability that Hughes made these communications and transfers on a cell phone. Therefore, there was a fair probability that evidence of a crime would be found on her cell phone.

And Hughes had an iCloud account, which Apple confirmed was set up to back up photos, web browsing history, emails, text messages, notes, and certain location data. That means that data on Hughes' cell phone would have been sent to and stored in the iCloud account. Given the conversations about drug packages and money transfers that the Affidavit sets out between Hester-Jackson and Hughes, there is a probability that the stored data from Hughes' cell phone would include evidence of drug trafficking or money laundering (as opposed to data with less evidentiary value, like heart rate data). Because there was a high probability that evidence of a crime was located on Hughes' cell phone, and potentially relevant data from her cell phone was automatically sent to Hughes' iCloud account, Magistrate Judge Altman could reasonably find a fair probability that evidence of a crime would be located on the iCloud account. There was a substantial basis for the probable cause finding. *See Tagg*, 886 F.3d at 586.

Hughes would disagree, and cited to *Brown*, 828 F.3d at 382-84 for the principle that "[if] the affidavit fails to include facts that directly

7

connect the [searched place] with the suspected drug dealing activity, or the evidence of this connection is unreliable, it cannot be inferred that [evidence will be found there]." Hughes contends that the government's position is that "because Hughes is allegedly involved in criminal activity, and because she had an iCloud account, there is—just as a general matter—probable cause to search her iCloud account." ECF No. 95, PageID.490-91. Hughes argues that there is no actual nexus "between the alleged criminal conduct and any data within Hughes' iCloud account." *Id.* at PageID.491. But there is such a nexus: the facts presented to Magistrate Judge Altman suggested that Hughes *used her cell phone and the applications on it in the furtherance of drug trafficking*. Because Hughes likely used her phone to advance the target offenses, there was a reasonable probability that evidence of the offenses would be on her cell phone. And because Hughes' iCloud account automatically transferred data from her cell phone to the iCloud account, there was also a reasonable probability that such evidence would be found in the iCloud account as well. Unlike in *Brown*, the affidavit presented facts connecting the searched place to the suspected drug dealing activity.

The search warrant affidavit contained evidence that provided a substantial basis for Magistrate Judge Altman's finding of probable cause. Defendant's argument to the contrary must fail.

8

### B. The Search Warrant Was Not Overbroad

"Items to be seized pursuant to a search warrant must be described with particularity." *United States v. Willoughby*, 742 F.3d 229, 233 (6th Cir. 2014) (internal formatting removed, *quoting Marcilis v. Twp. Of Redford*, 693 F.3d 589, 601 (6th Cir. 2012)). Hughes argues that the warrant here was overbroad for two reasons: "First, the warrant allows for the search and seizure of *all* information contained in the targeted iCloud account," and second, "the warrant contains no *meaningful* time limitation." ECF No. 95, PageID.494, 496 (emphasis in original).

#### 1. The Items to be Seized Were Not Overbroad

While the warrant did not restrict *the type* of information to be seized, it did limit its scope to include only evidence of drug trafficking and money laundering. ECF No. 97-1, PageID.551. When a warrant "contain[s] a global modifier that limit[s] its scope to items that were related to . . . offenses for which there was probable cause to think [the defendant] had committed," the warrant is not overbroad. *Willoughby*, 742. F.3d at 233. Because Hughes' warrant contained such a global modifier limiting its scope to evidence of drug trafficking and money laundering, offenses which, as stated, there was probable cause to think that Hughes had committed, the warrant was not overbroad.

### 2. The Time Frame for Which Items Were to be Seized Was Not Overbroad

When describing the items to be seized in a warrant, "[f]ailure to limit broad descriptive terms by relevant dates, when such dates are available to the police, will render a warrant overbroad." *United States v. Ford*, 184 F.3d 566, 576 (6th Cir. 1999). Warrants are not overbroad when they are limited to "the time period that the evidence suggested the activity occurred." *United States v. Hanna,* 661 F.3d 271, 287 (6th Cir. 2011).

Here, the warrant, which was issued on November 9, 2022, authorized the government to seize materials occurring between January 1, 2022, and October 26, 2022. ECF No. 97-1, PageID.510, PageID.548. Hughes claims this time window is overbroad, as "the timeframe for the alleged conduct between Hughes and Hester-Jackson occurred from April 9, 2022, to around April 13, 2022." ECF No. 95, PageID.496. However, the Affidavit stated that the government had been investigating the drug trafficking organization since 2020. ECF No. 97-1, PageID.513. In a case involving a long-operating drug trafficking operation, it stands to reason that the activity is on-going, and consequently the time period of the search would be for a longer period of time.

It was reasonable to think that Hughes was continuing to participate in the drug trafficking organization between January 1 and October 26, 2022 (where the indictment was filed against the drug

10

trafficking organization in October 2022, ECF No. 97-1, PageID.514) and that evidence of the target offenses would be located in her iCloud account as a result. Nothing indicated that her participation was strictly limited to that four-day window. Because the warrant was limited in time to "the time period that the evidence suggested the activity occurred," *Hanna*, 661 F.3d at 287, the warrant was not overbroad.

### C. The Good Faith Exception Would Apply

If a police officer relies on a defective search warrant in good faith, the exclusionary rule does not apply unless the affidavit is so lacking in indicia of probable cause that it would be unreasonable for any officer to rely on the warrant. "If the reviewing court is 'able to identify in the averring officer's affidavit some connection, regardless of how remote it may have been'—'some modicum of evidence, however slight'—'between the criminal activity at issue and the place to be searched,' then the affidavit is not bare bones and official reliance on it is reasonable." *United States v. White,* 874 F.3d 490, 497 (6th Cir. 2017) (*quoting United States v. Laughton*, 409 F.3d 744, 749–50 (6th Cir. 2005)).

There was a sufficient connection drawn in the affidavit between the criminal activity at issue—drug trafficking and money laundering—and the place to be searched, Hughes' iCloud account. But even if the warrant was defective, the good faith exception would prevent exclusion of the evidence seized. A reasonable officer would have no reason to doubt the Magistrate Judge's determination of probable cause to search the

iCloud account, because the Affidavit detailed that Hughes likely used her cell phone to facilitate drug trafficking and money laundering, and her iCloud account automatically transferred and stored data from Hughes' cell phone. That connection allows official reliance on this warrant to be reasonable. The good faith exception would therefore apply, and the exclusionary rule does not.

### III. CONCLUSION

For the reasons set forth above and discussed herein, Defendant Crystal Hughes' Motion to Suppress Evidence is **DENIED**.

**IT IS SO ORDERED.**

Dated: December 4, 2024        /s/Terrence G. Berg
                               HON. TERRENCE G. BERG
                               UNITED STATES DISTRICT JUDGE